IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ALTHA NEWMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CASE NO. 1:05-cv-1032-MEF |
| | ) | |
| CAREER CONSULTANTS, INC., | ) | (WO-Recommended for Publication) |
| d/b/a CAPPS COLLEGE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Altha Newman ("Plaintiff") brings suit against Defendant Career
Consultants, Inc., d/b/a Capps College ("Defendant"), alleging that it discriminated against
her in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981
("§ 1981"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*
("ADEA"), and the Alabama Age Discrimination in Employment Act, Ala. Code § 25-1-20
*et seq.* ("AADEA").[1]  Plaintiff seeks monetary damages, declaratory judgment, equitable
relief, and attorney's fees and costs.  This cause is presently before the Court on Defendant's
Motion for Summary Judgment (Doc. # 13).  The Court has carefully considered the
pleadings, briefs, and evidentiary submissions.  For the reasons stated herein, Defendant's
motion is due to be GRANTED.

---

[1] The Complaint does not properly specify under which statute or statutes the age
discrimination claims are brought.  It appears to attempt to bring the age discrimination claims under
Title VII or § 1981.  Neither statute, however, prohibits age discrimination.  *See Kilcrease v. Coffee
County, Ala.*, 951 F. Supp. 212, 215 (M.D. Ala. 1996) (De Ment, J.) (§ 1981); *Brogdon v. Ala. Dep't
of Econ. and Cmty. Affairs*, 864 F. Supp. 1161, 1166 (M.D. Ala. 1994) (Thompson, J.) (Title VII).
The Court therefore construes the Complaint as alleging claims under the ADEA and AADEA.

## I.  Jurisdiction and Venue

The Court exercises subject matter jurisdiction over this action pursuant 28 U.S.C. § 1331 (federal question), 42 U.S.C. § 1981, 42 U.S.C. § 2000e (Title VII), 29 U.S.C. § 621, *et seq.* (ADEA), and 28 U.S.C. § 1367 (supplemental jurisdiction).  The parties contest neither personal jurisdiction nor venue, and the Court finds a sufficient factual basis for each.

## II.  Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor."  *Chapman v. AI Transp.,* 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami,* 52 F.3d 918, 921 (11th Cir. 1995) (internal quotation marks and citations omitted)).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the

nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324.  To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the nonmovant and must draw all justifiable inferences from the evidence in the nonmoving party's favor.  *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *McCormick v. City of Fort Lauderdale,* 333 F.3d 1234, 1243 (11th Cir. 2003) (the evidence and all reasonable inferences from the evidence must be viewed in the light most favorable to the nonmovant).  After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).

### III.  Facts and Procedural History

The Court has carefully considered all documents submitted in support of and in opposition to the motion.  Viewed in the light most favorable to Plaintiff, the submissions

of the parties establish the following relevant facts:

Plaintiff is currently fifty-five years old.  In 2003, she applied for a position at Capps College in Dothan, Alabama.  She first interviewed with Lou McCallister, the Dothan Campus Director.  McCallister offered her the position of admissions advisor.  Plaintiff subsequently had a follow-up phone conversation with Paul Hoffman, Capps' Executive Vice President, who worked in Mobile, Alabama.  Plaintiff started training on August 12, 2003.  For the purposes of this motion, the Court will consider McCallister as Plaintiff's direct supervisor, although she states that she never quite understood the chain of command at Capps.  Plaintiff did know that she worked under McCallister's supervision.

Around the end of April 2004, McCallister asked Plaintiff if she would be interested in the Registrar position.  She was surprised because McCallister had earlier said that Plaintiff and another black female, Monteka Freeman, were "better in those positions," referring to the position of admissions advisor.  Plaintiff told McCallister that she would think about it over the weekend.  McCallister said that the decision to offer her the position came from Mobile. Plaintiff decided to accept the position.  McCallister told Plaintiff that it was not necessary for her to have a job description.  Plaintiff did not receive a pay raise when she became Registrar.  Plaintiff asked on several occasions for a pay raise, but McCallister said that her move to the Registrar position was a lateral promotion.  Plaintiff did get a pay raise in October or November of 2004.

McCallister made comments about Plaintiff's age from time to time.  He asked her

4

how it felt to be over fifty and made comments about people Plaintiff's age forgetting things. At the time, McCallister was thirty-nine or forty years of age. McCallister also told Plaintiff that she should be friendlier to Hoffman, to smile more when he was around, and to show more enthusiasm. He also told her to lighten up and that she was too uptight and professional. McCallister "sometimes" or "on occasion" asked Plaintiff why it was common for black males to have drug convictions. Plaintiff understood that she was supposed to report discrimination to McCallister. She also knew that she could report discrimination to Hoffman as well.

In July 2004, after she had been Registrar for over a month, Plaintiff was getting calls about the transcripts and inputting grades on rosters, and other related inquiries. However, she had not been trained in those duties. Plaintiff asked McCallister to see a job description for the Registrar position. McCallister showed her a description, and said that certain duties would be performed by him, by the Program Director, or by Sarah Buffy, the receptionist. However, the main office in Mobile was holding Plaintiff responsible for all of the Registrar duties. Plaintiff attempted to resolve this situation with McCallister but was unsuccessful. McCallister did modify the Registrar job description in writing.

McCallister was providing training for Buffy, who was white and approximately thirty-five years old, in certain Registrar duties that Plaintiff was not allowed to do. For example, McCallister would not teach Plaintiff how to schedule classes and would not let her do so; he showed Buffy how to schedule classes and assigned her that task.

Later in July 2004, Plaintiff emailed Hoffman and said that she needed training. Hoffman called McCallister to see about sending someone from Mobile to train Plaintiff. Hoffman quickly provided a trainer, Roberta Ellis, for Plaintiff. However, the training could not go forward because of a problem with the records. McCallister was angry with Plaintiff over this incident. He said that he felt betrayed that Plaintiff had talked to Hoffman rather than talking to him. After this conversation, Plaintiff and McCallister had little to say to each other.

On September 27, 2004, Plaintiff told McCallister that she thought he was discriminating against her on the basis of race, age, or both, because she was not being trained but he was training Buffy for the Registrar position. McCallister denied discriminating against Plaintiff.

In December 2004, Plaintiff talked to Hoffman regarding acts she thought were fraudulent at Capps. However, she did not discuss specific incidents, because she did not want to be seen as a whistleblower. Plaintiff also brought up the fact that she was not being trained. After their conversation, Hoffman sent Plaintiff an email on December 14, 2004. Hoffman noted that Plaintiff was reluctant to discuss specifics regarding her claims of fraudulent activity. He officially asked her to report to him any and all concerns she had regarding compliance issues no later than December 17, 2004. Hoffman informed Plaintiff that if he did not receive a report from her, he would assume that all issues had been investigated and resolved by Plaintiff and McCallister. Plaintiff did not provide Hoffman

with any additional information.

Hoffman would on occasion ask Plaintiff to let him know what McCallister was doing.  However, Plaintiff usually did not do so, because McCallister asked her what she talked about with Hoffman.

Plaintiff decided to communicate with Hoffman in order to request training and discuss a pay raise.  She felt that she had "exhausted all of the avenues" with McCallister.  McCallister was not speaking with her.  On January 7, 2005, Plaintiff faxed a letter to Hoffman.  Hoffman called Plaintiff in response to her letter and discussed her concerns regarding training and a pay raise.

On January 19, 2005, McCallister went into Plaintiff's office and asked her to sign a document in which she would take responsibility for transcript errors that he believed she had made.  The document set out the alleged errors and stated that McCallister had discussed these errors with Plaintiff and had explained the impact of the errors and how to correct them.  Plaintiff stated that she would not sign the document or take responsibility for any fraudulent act relating to Pell grants because she had not been trained.  Plaintiff believed that the document was not accurate.  McCallister sat in Plaintiff's office for approximately thirty minutes, trying to get her to sign the document.

On February 11, 2005, as Plaintiff was leaving work, McCallister asked if he could see her in his office.  He asked Plaintiff for her keys and told her that he was going to have to let her go because "it just wasn't working out."  Plaintiff asked McCallister whether the

decision was based on her race, and he said that it wasn't.  Plaintiff does not know of anyone other than McCallister who was involved in the decision to terminate her.  Buffy became Registrar after Plaintiff was terminated.

Plaintiff filed her EEOC charge on March 16, 2005, and her right-to-sue letter was dated August 1, 2005.  On October 28, 2005, she filed suit in this Court (Doc. # 1).  Defendant filed a Motion for Summary Judgment on October 24, 2006 (Doc. # 13).

## IV.  Discussion

*A.  Failure to Exhaust Administrative Remedies*

Defendant argues that Plaintiff's failure to promote, failure to grant a pay raise, and hostile work environment[2] claims are time-barred or outside the scope of the EEOC charge.  In her Response, Plaintiff does not dispute Defendant's contentions.

An employee seeking to bring suit against her employer under either Title VII or the ADEA must first file an administrative charge of discrimination with the EEOC.  *Ledbetter v. Goodyear Tire & Rubber Co.*, 421 F.3d 1169, 1178 (11th Cir. 2005) (Title VII); *Jones v. Dillard's, Inc.,* 331 F.3d 1259, 1263 (11th Cir. 2003) (ADEA).  In Alabama, a plaintiff's ADEA or Title VII claim must have been brought to the EEOC within 180 days of the adverse employment action challenged in the claim.  *Ledbetter*, 421 F.3d at 1178 (Title VII); *Jones,* 331 F.3d at 1263 (ADEA).  In addition, for an AADEA claim to be timely, the plaintiff must file either an action in state court or a claim with the EEOC within 180 days

---

[2] The Court construes Plaintiff's allegations of harassment and age- and race-related remarks as hostile work environment claims.

of the occurrence of the alleged unlawful practice.  *See Jones v. Dillard's, Inc.*, 368 F.3d 1278, 1279 (11th Cir. 2004) (quoting *Byrd v. Dillard's, Inc.*, 892 So. 2d 342, 346 (Ala. 2004) (per curiam)).

Each discrete discriminatory act such as termination or refusal to hire "starts a new clock for filing charges alleging that act.  The charge, therefore, must be filed within the 180- or 300-day time period after the discrete discriminatory act occurred." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *see Robinson v. Regions Fin. Corp.*, 242 F. Supp. 2d 1070, 1076 (M.D. Ala. 2003) (Thompson, J.) (applying *Morgan* to ADEA claims). Discrete acts that fall outside the statutory time period are time-barred, even if they are related to acts falling within that time period.  *Morgan*, 536 U.S. at 113.  An AADEA plaintiff's claims are also barred if untimely.  *See* Ala. Code § 25-1-29 (adopting the remedies, defenses, and statutes of limitations set out in the ADEA); *McClinton v. Ala. By-Products Corp.*, 743 F.2d 1483, 1484-85 (11th Cir. 1984) (timely filing of an EEOC charge is a prerequisite to an ADEA action).

If a complaint raises allegations that are not reasonably related to the underlying charge raised before the EEOC, the plaintiff is precluded from asserting those allegations in a civil action.  *Williams v. Hager Hinge Co.*, 916 F. Supp. 1163, 1172 (M.D. Ala. 1995) (De Ment, J.).

> A claim is reasonably related to an underlying EEOC charge of discrimination when the allegations fit within any one of the following three categories: (1) the claim was expressly raised in the pleadings before the EEOC's administrative law judge; (2)

9

> the claim might reasonably be expected to be considered in a
> diligent investigation of those issues expressly raised in the
> EEOC charge; or, (3) the claim was in fact considered during
> the EEOC investigation.

*Id.* (citing *Griffin v. Carlin*, 755 F.2d 1516, 1522 (11th Cir. 1985)).

Plaintiff filed an EEOC charge of discrimination on March 16, 2005. Thus, under Title VII, the ADEA, or the AADEA, she cannot challenge any adverse employment actions that occurred prior to September 17, 2004, which was 180 days prior to March 16, 2005. Summary judgment is therefore due to be GRANTED on Plaintiff's claim of failure to grant pay raise under Title VII, the ADEA, and the AADEA. With respect to Plaintiff's claims for failure to promote under Title VII, the ADEA, and the AADEA, it is unclear whether the challenged action falls outside the statutory period. In any event, as explained below, summary judgment will be granted on those claims for failure to include them in the EEOC charge.

Defendant argues that summary judgment should be granted on Plaintiff's failure to promote and hostile work environment claims because they were not included in her EEOC charge and are not reasonably related to her termination and denial of training claims. Defendant first cites *Coon v. Ga. Pac. Corp.*, 829 F.2d 1563, 1569 (11th Cir. 1987), for the proposition that Plaintiff's other claims are not reasonably related to her denial of training and termination claims. This case is distinguishable, though, because in *Coon* the plaintiff failed to plead in her complaint or amend the complaint to allege the claims that she failed to include in her EEOC charge. *See id.* In fact, the Eleventh Circuit stated that while she

10

might have been "permitted . . . to plead the additional claims originally or by appropriate amendment, none of the cases relied on by plaintiff suggests that she can prove these claims at trial without having pleaded them in her complaint." *Id.*

The other two cases cited by Defendant, however, are more persuasive.  Defendant cites *Williams v. Hager Hinge Co.*, 916 F. Supp. 1163, 1172 (M.D. Ala. 1995) (De Ment, J.), in which this Court found that the plaintiff's claims of denial of promotions, pay raises, transfers, and overtime were not reasonably related to her claim of discriminatory transfer. Defendant also cites *Mack v. W.R. Grace Co.*, 578 F. Supp. 626, 632 (N.D. Ga. 1983).  In that case, the district court found that the plaintiff's promotion, salary, and training claims were not reasonably related to his discharge claim.  *Id.*  To be sure, in this case Plaintiff included not only a discharge claim but also a denial of training claim in her EEOC charge, which might arguably be more closely related to the claims that she did not include in her EEOC charge than a discriminatory transfer or discharge claim.  However, based on the cases cited by Defendant, the Court finds that the claims Plaintiff failed to include in her EEOC charge would not be reasonably expected to grow out of Plaintiff's discharge and denial of training claims, and therefore were not within the reasonable scope of an EEOC investigation into those claims.  Summary judgment is due to be GRANTED on Plaintiff's failure to promote and hostile work environment claims brought pursuant to Title VII, the ADEA, and the AADEA.

Unlike Title VII, the ADEA, and the AADEA, § 1981 does not require that a plaintiff

exhaust administrative remedies before bringing suit in federal court. *See Caldwell v. Nat'l Brewing Co.,* 443 F.2d 1044, 1046 (5th Cir. 1971) (holding that a plaintiff alleging discriminatory employment practices with regard to race "has an independent remedy under § 1981 without respect to exhaustion under Title VII"). Therefore, a claim brought under § 1981 cannot be defeated by a deficient EEOC charge, and the Court will address Plaintiff's § 1981 claims of failure to promote, failure to grant a pay raise, and hostile work environment.

## B. *Statutory and Analytical Framework*

Because both the race and age discrimination statutes at issue in this case are subject to the same analytical framework, the Court will discuss certain aspects of Plaintiff's age and race discrimination claims together. *See Cofield v. Goldkist, Inc.*, 267 F.3d 1264, 1268 n.6 (11th Cir. 2001); *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).

Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). A plaintiff can establish discriminatory intent through direct or circumstantial evidence. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1085 (11th Cir. 2004). Where a plaintiff tries to establish discrimination through circumstantial evidence, courts apply the familiar tripartite burden-shifting analysis promulgated by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), and *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981).

Section 1981 "prohibits intentional race discrimination in the making and enforcement of public and private contracts, including employment contracts."[3] *Ferrill v. Parker Group*, 168 F.3d 468, 472 (11th Cir. 1999). Section 1981 claims must be supported by proof of *intentional* discrimination. *Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391 (1982); *Brown v. Am. Honda Motor Co.*, 939 F.2d 946, 949 (11th Cir. 1991). Discriminatory intent can be established through either direct or circumstantial evidence. *See U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714 n.3 (1983). Where a plaintiff seeks to prove intentional discrimination through circumstantial evidence of the employer's intent, the court applies the burden-shifting framework set out in *McDonnell Douglas* and *Burdine*.[4]

The ADEA makes it "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's

---

[3] Specifically, Section 1981 provides, in relevant part, that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, . . . as is enjoyed by white citizens. . . .
>
> . . . .
>
> For purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

[4] The Court notes that in *McDonnell Douglas*, the Supreme Court articulated the tripartite framework for analyzing claims brought under Title VII. However, the allocation of burdens and elements of a *prima facie* case are the same for employment claims stemming from Title VII and Section 1981. *See Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1060 (11th Cir. 1994); *Howard v. BP Oil Co., Inc.*, 32 F.3d 520, 524 n.2 (11th Cir. 1994).

age." 29 U.S.C. § 623(a)(1).

> When a plaintiff alleges disparate treatment, 'liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision. That is, the plaintiff's age must have 'actually played a role in [the employer's decisionmaking] process and had a determinative influence on the outcome.'

*Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 141 (2000) (internal citation omitted) (quoting *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 610 (1993)).  Courts have often recognized that the inquiry under the ADEA implicate analyses of the mental processes of employers for which there is seldom eye-witness testimony.  *See id.*  Consequently, they have applied some variation on the framework articulated in *McDonnell Douglas* and its progeny to analyze ADEA cases brought primarily on circumstantial evidence.  *Id.* at 141 (collecting cases); *Turlington v. Atlanta Gas Light Co.,* 135 F.3d 1428, 1432 (11th Cir. 1998), *cert. denied,* 525 U.S. 962 (1998).  This Court has analyzed a plaintiff's AADEA claims utilizing the principles governing the order and allocation of proof in Title VII cases, and will do so here.  *See Bonham v. Regions Mortg., Inc.,* 129 F. Supp. 2d 1315, 1321-26 (M.D. Ala. 2001) (Thompson, J.) (applying the Title VII framework for the order and allocation of proof to ADEA and AADEA claims).

Thus, an employee bringing a claim under § 1981, the ADEA, or the AADEA must initially establish a prima facie case of discrimination through one of three methods: presenting direct evidence of discriminatory intent, presenting circumstantial evidence of discrimination by satisfying the analysis set forth in *McDonnell Douglas* and its progeny,

or introducing statistical evidence of discrimination.  *See, e.g., Walker v. NationsBank of Fla., N.A.,* 53 F.3d 1548, 1555-56 (11th Cir. 1995).

Plaintiff has presented no direct or statistical evidence of discriminatory intent.  While she presents evidence of comments which could be viewed as discriminatory, "courts have found only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of [membership in the protected class], to constitute direct evidence of discrimination." *Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir. 1989).

As to circumstantial evidence of discrimination, under the *McDonnell Douglas* analysis, the plaintiff must first establish a prima facie case of discrimination.  "A plaintiff establishes a prima facie case of disparate treatment by showing that she was a qualified member of a protected class and was subjected to an adverse employment action in contrast with similarly situated employees outside the protected class."  *Wilson*, 376 F.3d at 1087. "Demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (per curiam).

Once a plaintiff establishes the requisite elements of the prima facie case, the defendant has the burden of producing legitimate, nondiscriminatory reasons for the challenged employment action.  *See, e.g., Holifield*, 115 F.3d at 1564 (citing *Burdine*, 450 U.S. 248).  The employer's burden is "exceedingly light."  *Id.* (quoting *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1061 (11th Cir. 1994)).  This burden is one of production, not

persuasion, and consequently the employer "need only produce evidence that could allow a rational fact finder to conclude that [the employee's] discharge was not made for a discriminatory reason." *Standard*, 161 F.3d at 1331.

If the defendant presents a legitimate, nondiscriminatory reason for the challenged employment action, the burden then returns to the plaintiff to supply "evidence, including the previously produced evidence establishing the prima-facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Davis v. Qualico Miscellaneous, Inc.,* 161 F. Supp. 2d 1314, 1322 (M.D. Ala. 2001) (Thompson, J.) (citing *Chapman*, 229 F.3d at 1024). "Because the plaintiff bears the burden of establishing pretext, [s]he must present 'significantly probative' evidence on the issue to avoid summary judgment." *Young v. Gen. Foods Corp*., 840 F.2d 825, 829 (11th Cir. 1988). The plaintiff may seek to demonstrate that the proffered reason was not the true reason for the employment decision "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 256; *Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir. 1997). "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves,* 530 U.S. at 148.

"Provided that the proffered reason is one that might motivate a reasonable employer,

an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman*, 229 F.3d at 1030.  "The inquiry into pretext centers upon the employer's beliefs, and not the employee's own perceptions of his performance." *Holifield*, 115 F.3d at 1565.  As long as an employer's beliefs were honest, they can be mistaken without it implying that the employer acted with discriminatory motive. *See Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002) ("We are not interested in whether the conclusion is a correct one, but whether it is an honest one . . . . [O]ur sole concern is whether unlawful discriminatory animus motivates a challenged employment decision." (quotations omitted)).

A plaintiff's conclusory allegations are simply not sufficient to demonstrate pretext. *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990) ("[T]he plaintiff must . . . present concrete evidence in the form of specific facts which show that the defendant's proffered reason is mere pretext.  Mere conclusory allegations and assertions will not suffice.").

## C. *Plaintiff's Denial of Training Claim*s

Plaintiff alleges that Defendant failed to provide her adequate training because of her race and age.  Denial of job-related training may constitute a violation of Title VII. *See Durkin v. City of Chicago*, 341 F.3d 606, 611 (7th Cir. 2003) (citing *Pafford v. Herman,* 148 F.3d 658, 667 (7th Cir.1998)).  Similarly, § 1981 prohibits denial of training on the basis of race. *See, e.g., Rowlett v. Anheuser-Busch, Inc.*, 832 F.2d 194, 201 (1st Cir. 1987),

17

*abrogated on other grounds by Iacobucci v. Boulter*, 193 F.3d 14 (1st Cir. 1999).  The ADEA also makes it unlawful to deny training to an employee on the basis of age.  *See Turlington*, 135 F.3d at 1436 n.16.  Likewise, the AADEA appears to prohibit discrimination on the basis of race with respect to training.  *See* Ala. Code §§ 25-1-22, 25-1-25.

To establish a prima facie case of discriminatory denial of training, "a plaintiff must show that: (1) the plaintiff is a member of a protected class; (2) the defendant provided training to its employees; (3) the plaintiff was eligible for the training; and (4) the plaintiff was not provided training under circumstances giving rise to an inference of discrimination." *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649-50 (4th Cir. 2002) (citing *Pafford*, 148 F.3d at 667).

The Court concludes that Plaintiff has established a prima facie case of discrimination.  Plaintiff is a member of a protected class.  Viewing the facts in the light most favorable to Plaintiff, Defendant provided training to its employees and Plaintiff was eligible for that training.  Finally, viewed in the light most favorable to Plaintiff, the refusal to provide training gives rise to an inference of training where Buffy, a younger white employee, was trained in duties which fell within Plaintiff's job description and was given Plaintiff's position after she was terminated.

The burden therefore shifts to Defendant to provide a legitimate, nondiscriminatory reason for its denial of training.  Defendant asserts that it did not assign certain duties to

Plaintiff or provide her training for those duties because it believed that she had enough to do with her current responsibilities.  The Court concludes that Defendant has met its "exceedingly light" burden.  *See Holifield,* 115 F.3d at 1564.

Plaintiff must now demonstrate that the reason given by Defendants is pretext for discrimination.  Plaintiff fails to address whether Defendant's stated reason for not training her was a pretext for discrimination.  The Court concludes that Plaintiff has not met her burden to demonstrate that Defendant's legitimate, nondiscriminatory reason for denial of training is pretext.  As such, Defendant is entitled to judgment as a matter of law on Plaintiff's denial of training claims.

### D.  Plaintiff's Termination Claims

Plaintiff also alleges that Defendant terminated Plaintiff on the basis of her race and age.  Title VII and § 1981 prohibit termination on the basis of race.  *See Standard*, 161 F.3d at 1330.  The ADEA prohibits termination on the basis of age, *see id.* at 1329, as does the AADEA, *see* Ala. Code §§ 25-1-21, 25-1-22.

A plaintiff may establish a prima facie case of discriminatory termination by showing that: (1) she is a member of a protected class; (2) she was qualified for the position she held; (3) she was terminated from that position; and (4) her former position was filled by someone of comparable qualifications outside the protected class.  *See Sturniolo v. Sheaffer, Eaton, Inc.,* 15 F.3d 1023, 1025 (11th Cir. 1994); *Jones v. Lumberjack Meats, Inc.,* 680 F.2d 98, 101 (11th Cir. 1982).  The Court finds that Plaintiff has met her burden of demonstrating a prima

facie case.

The burden thus shifts to Defendant to articulate a legitimate, nondiscriminatory reason for Plaintiff's termination.  Defendant claims that it terminated Plaintiff because she (1) was insubordinate toward Hoffman in December 2004; (2) was insubordinate towards McCallister in January 2005; (3) failed to ensure the accuracy of students' transcripts in January 2005; (4) complained that she was not the Registrar and sought a title that did not exist; and (5) had a negative attitude.  The Court finds that Defendant has presented legitimate, nondiscriminatory reasons for terminating Plaintiff.

In order to demonstrate that Defendant's proffered reasons are pretext for discrimination, Plaintiff argues that the reasons presented by Defendant regarding her unfriendly attitude and poor job performance are pretext because her productivity was rated "good."  She argues that it is "insulting" for Defendant to terminate her for being not "friendly enough," especially where she received the highest rating for "Teamwork/Attitude." Plaintiff further contends that "nothing objective in the record supports any of [McCallister's] stated 'reasons' for Plaintiff's termination, including the afterthought, insubordination."

The Court concludes that Plaintiff has not met her burden of demonstrating that Defendant's proffered reasons are pretext for discrimination.  She does not explain how insubordination was an afterthought.  She does not specifically address Defendant's reasons regarding her failure to ensure that transcripts were accurate and her complaints about her

job duties and requests for a job title that did not exist, other than to claim that they, like all of Defendant's proffered reasons, lack any objective basis in the record.  These conclusory allegations are not sufficient to demonstrate pretext.  *See Earley*, 907 F.2d at 1081.  Plaintiff has not met her burden, and Defendant is entitled to judgment as a matter of law on Plaintiff's termination claims.

E.  *Plaintiff's Claims of Failure to Promote and Grant Pay Raise*

Plaintiff alleges that Defendant refused to give her a pay raise that she was due when she was promoted to Registrar.  From the Complaint it appears that Plaintiff may allege that Defendant failed to promote her.  These claims are cognizable under § 1981.  *See* 42 U.S.C. § 1981 ("[T]he term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."); *Brown v. Seminole Marine, Inc.*, No. Civ.A. 603CV47HL, 2005 WL 2217429, at *2 (M.D. Ga. Sept. 9, 2005) (denial of pay raise); *Goodgame v. Am. Cast Iron Pipe Co.*, 75 F.3d 1516, 1518 (11th Cir. 1996) (denial of promotion).

To meet her burden of showing a prima facie case of discriminatory failure to promote, a plaintiff must establish that:

> (1) he is a member of a protected minority; (2) he was qualified and applied for the promotion; (3) he was rejected despite his qualifications; and (4) other equally or less qualified employees who are not members of the protected minority were promoted.

*Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1339 (11th Cir. 2000).   The Court

21

concludes that Plaintiff has not met her burden.  She does not address either a failure to promote or failure to grant a pay raise claim in her Response to the Motion for Summary Judgment.  She has not demonstrated that she applied for a promotion and was rejected, or that other equally or less qualified nonminorities were promoted.

Turning to Plaintiff's claim for failure to grant a pay raise, she could establish a prima facie case by showing that similarly-situated employees outside the protected class received raises while she did not.  *See Wilson*, 376 F.3d at 1087; *Amro v. Boeing Co.*, 232 F.3d 790, 798 (10th Cir. 2000).  However, Plaintiff has failed to do so.  In fact, she does not attempt to identify a similarly-situated employee outside the protected class who received raises while she did not.  She has therefore not presented a prima facie case, and summary judgment is due to be GRANTED on this claim.

*F.  Plaintiff's Hostile Work Environment Claim*

Plaintiff contends that she was "harassed to perform acts she deemed fraudulent."  The Court construes this claim as one of hostile work environment based on race.  Such claims are cognizable under § 1981.  *See Shields v. Fort James Corp.*, 305 F.3d 1280, 1282 (11th Cir. 2002).  To establish a prima facie case for a hostile work environment claim, a plaintiff must show: (1) that she belongs to a protected group; (2) that she has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the plaintiff; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working

22

environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).

Establishing that harassing conduct was sufficient to alter the employee's terms or conditions of employment includes both a subjective and objective component. *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999). The employee must subjectively perceive the harassment as sufficiently severe or pervasive to alter the terms and conditions of employment, and this perception must be objectively reasonable. *Id.* When addressing the objective component, courts should consider the following factors: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance. *Id.*

The Court concludes that Plaintiff has not met her burden to demonstrate a prima facie case of hostile work environment. Plaintiff alleges that Mr. McCallister spent approximately thirty minutes in her office while asking her to sign a document stating that she made errors on transcripts. She also alleges that McCallister occasionally commented on black males' involvement with drugs. These incidents are not frequent or pervasive enough to demonstrate a prima facie case of hostile work environment. *See, e.g., Sasser v. Ala. Dep't of Corr.*, 373 F. Supp. 2d 1276, 1290 (M.D. Ala. 2005) (Fuller, J.) ("four incidents over a nine-month period" not sufficiently pervasive to establish a prima facie case of racially

hostile work environment); *Portera v. State of Ala. Dep't of Fin.*, 322 F. Supp. 2d 1285, 1290 (M.D. Ala. 2004) (Thompson, J.) ("four incidents over a six-month period" not "frequent or severe enough to create a hostile work environment or constitute harassment").  The remarks allegedly made by McCallister were isolated and not "extremely serious."  *See Baker v. Ala. Dep't of Pub. Safety*, 296 F. Supp. 2d 1299, 1309-1310 (M.D. Ala. 2003) (Albritton, J.) (quoting *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998)) ("[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" (alteration in original)).  The Court finds that the alleged acts do not meet the objective component of the test for whether harassing conduct was sufficient to alter Plaintiff's terms or conditions of employment.  As a result, Defendant is entitled to judgment as a matter of law on Plaintiff's hostile work environment claim.

## V.  Conclusion

For the reasons set forth above, it is hereby ORDERED that:

1.  Defendant's Motion for Summary Judgment (Doc. # 13) is GRANTED.

2.  The trial and pretrial hearing are CANCELED.

3.  The Court will enter a separate final judgment taxing costs.

DONE this the 18th day of January, 2007.

/s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE